Good morning. May it please the Court, Matthew Walsh for Petitioner Omnicare. I'd like to reserve three minutes for rebuttal. Please watch your time. Just as a party cannot be forced to arbitrate when they did not agree to do so, a party is not bound by an award that fails to meet the requirements set forth in the arbitration agreement. Almost 18 years ago to the day, this Court vacated an arbitration award because the underlying arbitration clause required the arbitrators to provide findings of fact and conclusions of law, but they failed to do so. I have a real question. I assume you're referring to Western employers. I have a real question about what's left of Western employers after Hall and Kiyosera. I mean, Hall was pretty strong in saying unless there's some sort of egregious problem with the arbitration, like fraud, we're not going to allow the decision to be, it must be affirmed, we're not going to let it be overturned on other grounds. And I understand that Western employers is not exactly the same as the Hall situation, but I'm wondering what's left over now. There are two reasons that Western employers is still good law after Hall. The first is Western employers relied upon the FAA section 10A4. That's the same exceed your powers or exceed their powers clause that this Court gets the manifest disregard reason to vacate the arbitration award as well as the completely irrational reason to vacate an arbitration award. But exceed your power includes anything we put into the contract. Isn't that just an end run around Hall? Isn't that what Hall was addressing? No, no. Hall was addressing looking at the merits of an award. In that case, you can't have an arbitration clause that, for instance, expands the judicial power to review an award. When the Court's looking at the merits of the award, it held strict to the exceed your power standard. This Court subsequently in Comedy Club, in the decision authored by Judge Gould, found that under Ninth Circuit law, the exceed your powers prong still included among other things the completely irrational argument as well as the manifest disregard argument. But those are in the statute, right? No, they aren't. The statute says only exceed your powers. If the arbitrator exceeds your powers. This Court later found that both the manifest disregard prong is part of exceeding your powers as well as the completely irrational standard is part of exceeding your powers. Western employers is no different. That was a case in which the Circuit Court found that the arbitrator exceeded their powers by failing to comply with the floor set by the parties in their arbitration agreement. And that floor was they wanted findings of fact and conclusions of law. It's the exact same thing here. And that falls under this. Mr. Walsh, Judge Gould, with a pinpoint question. Can you point us in the clause calling for arbitration to the language that you contend required the arbitrator to make findings of fact and conclusions of law? Certainly, Your Honor. I am looking in the record. Tab 5, Exhibit B, page 111 on the bottom. The clause, this is the contract of the parties. The clause is 8.6. It is about a 12-line arbitration clause, four lines from the bottom. Reads, the Federal Arbitration Act, 9 U.S.C. section 1 through 16, shall also apply to such arbitration. The arbitrator shall prepare in writing and provide to the parties an award, including factual findings and the legal reasons on which the award is based. To finish off the question from Judge Ikuda about is there still, Western employers still good law following Hall. Yes, excedure powers is still a good, it's still an absolutely good piece of statutory authority. And this court's already found that the prior grounds of this court, at least manifest disregard and completely irrational, fall within the excedure authorities. This case also is a contract case. Arbitration is a creature of contract. The arbitrator's powers exceed only as far as the contract permits him to go. Just as if the contract clause says you'll have three arbitrators and only one was appointed, that would be an inappropriate arbitration. Here, the parties bargained for and got in the arbitration clause, a clause saying there will be legal reasons and factual findings and there shouldn't be any dispute that we didn't get those because on the face of the first page of the award, he said he's applying a different standard. There's one case in the country that I found in which an arbitrator was set a floor in the arbitration agreement and he applied a standard or she applied a standard less than that. In that case, it's Western Employers. When the parties say we'll arbitrate under these particular conditions and the arbitrator fails to comply with it, the agreed party cannot be bound by the award. That is, it is a contractual issue. It is beyond the arbitrator's power granted by the parties. And I would hasten to add there are very good reasons for findings of fact clause. The parties here are still in their contractual relationship. We've been told. Well, there were some findings of fact, right? I mean, there wasn't a section that said findings of fact section, but there were certainly some factual findings and some legal reasoning there. There were certainly conclusions, and we can debate whether or not they're factual findings. There shouldn't be any debate that the judge, the arbitrator, didn't intend to provide a set of factual findings, nor should there be a debate that he didn't actually apply any findings as to the number one most important clause in the agreement, the payment clause. This wasn't arbitration about contract payments. Nowhere did he cite the clause. Nowhere did he give findings of fact regarding the clause. And, in fact, his ultimate conclusion is directly contrary to that clause. So there really can be very little question that someone wants to say there are findings and some of these conclusions might be findings. There can be no dispute that he didn't make findings as to significantly important issues, and nor did he mean to. Whether he read the clause and disregarded it or whether he made a mistake, he didn't give Omnicare what Omnicare bargained for. Are you saying that by not mentioning Section 4.4, the arbitrator's decision was irrational or not of the essence of the contract? Because he's clearly looking at the contract as a whole and saying, well, there was some additional burden was put on RX Solutions, but it wasn't the fault of Omnicare. It wasn't the fault of RX Solutions. It was just the nature of what CMS was doing and the lag time, et cetera. So he's clearly looking at the contract as a whole and saying Omnicare is supposed to comply with the CMS regulations. It's unclear, with all due respect to Your Honor, that he did look at 4.4 because he did find in a conclusion that Omnicare was not entitled to collect co-pays from these particular individuals, but he never followed up because under the contract clause, RX Solutions shall pay Omnicare the entire contract amount if it's not entitled to collect. Now, he said CMS regulations make it different. Do you tell us which regulations? No. To the extent there's regulations or guidance that trump the contract, we don't know which pieces of regulation those are. There's no legal reasons. CMS changes its rules all the time. What if it changes some of those regulations, therefore putting the contract back in business and making this clause pertinent? We don't know what that is. There's no legal reasons. He just refers generally to CMS rules and regulations, and you saw the record. A lot were submitted, and sometimes they're contradictory. So we have no guidance in this relationship going forward. And there's a second ground that I think is extremely important in what these clauses do. They ensure that the arbitrator puts in the requisite amount of care and attention into preparing the award. There are very few protections to a party who's in arbitration to ensure the arbitrator renders a sound award. This is one of the few things you can do. You can tell the arbitrator, hey, you have to decide the contested issues. Give me factual findings. Give me legal reasons. That forces the arbitrator to confront inconsistencies and reconcile them. Here there was no reconciliation on the face of the award. There were inconsistencies. What's the stopping point here? Now, I mean, we've got this language in halls, and there has to be something really egregious before we would overturn the arbitrator's decision. And if the rule is, well, we're going to look over every bit of the contract and hold it up to some standard, I mean, you'd agree there's some factual stuff in there and there's some legal stuff in there. And so you say, well, it doesn't meet the standard of what we think is appropriate, but how can we set a line for when we would not overturn the arbitrator's award? That's a great question, and we don't need to wrestle with that question here because on the face of the award, he applied a standard that's lesser than factual findings and legal reasons. He applied the JAMS standard. I'm going to give you a brief statement of my reasons, period. He wasn't even trying to apply the standard. There's one case in the country where an arbitrator didn't try to apply the standard. It's Western Employers. So are you saying that the problem here was that the arbitrator should have set out what standard he was applying and we should overturn it because he didn't or because he set out one that you disagree with? I'm not sure about what this would mean in future cases, what rule we would apply. The parties set a floor in their contract of what they expect of the conduct of the arbitration. The arbitrator says on the face of his award, in essence, I'm not meeting that floor. And where are you? The floor is the findings of fact and conclusions of law. Correct, Your Honor. I know, but that's what you're suggesting is the floor. So, I mean, if I disagree with the premise that that's the floor, then your argument is over, correct? No, Your Honor. I mean, the bottom line is you're suggesting that because there's language in there that says someone should give their factual findings and legal reasons for it, that that means that I'm to adopt for this particular contract for all purposes the same thing I would look at if I'm going to the district judge and putting findings of fact and conclusions of law. That is not the language in the contract, but you want me to adopt that language to meet that level of thing. What if I say wrong? I say you're out to lunch. That is not what's there. I say Green v. Amertech Corp. is very helpful. If they want something where they detail this and they say we're going to have the same findings the district judge has got to meet, they better say it because if they don't say it, I'm not going there. Then how do we then overturn this? Well, as I think I understand your question, Judge Smith, the issue is, from my perspective, the factual findings are not in the award. There are certainly some conclusions. It should be undisputed that there are significant arguments made by Almiter that are completely unaddressed in the ruling. Even if the arbitrator said at the front, I'm applying the right standards, there would be some sort of question whether or not all the factual findings are here. We don't need to come down to parsing factual findings because the standard he gives us, a brief statement of reasons supporting the award, he just missed. He missed the arbitration clause. He didn't even try to give us the factual findings. It's like going to arbitration and showing there's one arbitrator when you contract it for three. That's not the minimum conduct that was required. But there are factual findings there. I mean, that's the problem. Your Honor, there are some. Whatever he said, whatever the arbitrator said, he put in the factual findings and that was all that was required in the contract. There are some factual findings. They're put in, I submit, by happenstance because he didn't mean to. And this Court's in no position to know if it's a complete set. And we've shown you, based on the arguments we made, he ignored the financial risk provision and said it read it completely differently than the contract. He says we don't know why. He ignored 4.4 of the contract, which was the very reason we brought the arbitration in the first place. It says we shall get paid. And he also apparently didn't read the entire arbitration clause. Doesn't that go to merits, though? I mean, many, I'm sure litigators would agree that many district court and even appellate decisions miss the key arguments that were made by the litigators. No, it doesn't go to the merits because I'm not asking you in this particular first argument to dig beneath the facts and tell me if they're right or wrong. What I'm asking you to hopefully recognize is that he did not provide answers to material issues. It's a go-forward problem for us. We're allegedly bound by some CMS guidance. There's no indication which guidance he liked and which he didn't and no indication why some portions of the contract applied to us and some portions didn't. This relationship is ongoing. The co-pays are accruing at a rate of $10,000-plus a day of improperly assessed payments. We don't know when we're entitled to collect and when we're not. As a practical matter, wasn't the arbitrator just saying you need to get the correct documentation for the CMS regulations that allow you to be reimbursed? He says that's one way to get reimbursed. He also says that certain parties acted reasonably in some instances and reasonably in others without telling us what the lines were. What's the guidance of our relationship going forward? We bargained for a higher standard in the arbitration clause. Just like Western employers, it should be vacated. I'd like to reserve the remainder of my time if I could. Your Honors, Tom Fitzgerald on behalf of the respondent, RX Solutions. I'd like, if I could, to jump right into the discussion that you were just having. If you notice, what Mr. Walsh on behalf of Omnicare is asking, in the first instance, as part of his primary argument, and that is with respect to the sufficiency of the order, he is asking you to read just the first sentence or the first two sentences of the order, of the award, and see that it did not mirror, it did not utter the magic words that were in the arbitration contract or arbitration provision. It didn't utter those exact words, and he wants you to stop. And he's saying you cannot and should not then go to review the body of the order to determine whether, in fact, that standard was met. Then number two. The order is a little bit vague, don't you think? I mean, it doesn't walk through the contract, and it doesn't clearly lay out what the legal standard is that he's using for making the decisions. Your Honor, that gets exactly to my second point, and the second point is when you see what the standard is in the contract, and that is factual findings and legal reasons. That's what the contract says. What is that standard? And Judge Smith, you got to it a little bit. Is it as high as the Rule 52 standard that would apply if we were in a district court proceeding? We submit that it's not, but even if it were, we think it meets that standard. Because what is that standard? That standard is discussed in the Green case. And the standard is, there's no special format. We know what it should look like in a district court case, but the standard substantively when you review that is whether there is enough in the award so that a reviewing tribunal can ascertain the reasons for the determination. Let me stop there and talk about for a second the standard that Mr. Walsh would have you apply. He talks about an ongoing relationship. He talks about disputes between the parties that aren't an issue here. He talks about uncertainty, all vague kinds of things, about terrible things that are going on under this contract that have been out there for two years and no other legal proceedings. He says that that's the standard, that what's required is that this judge lay out a roadmap by which the parties can conduct their business in the future under a whole range of situations. That's not the standard even under Rule 52. It's simply can you determine the basis for the court's ruling? Well, can we determine why he didn't give any effect to the Section 4.4 language? Yes, Your Honor. Here's what was going on with Section 4.4. Just as Mr. Walsh was telling you you can't go past that first section, the introductory section of the award, and examine the body of the award to see if it's sufficient, so too was he arguing to Judge Taylor. Judge Taylor, 4.4, that's it. Not even all of 4.4. This whole case turns the fulcrum on this phrase in 4.4. And what 4.4 says is this is the payment that you are entitled to. It sets out that equation. But just because that's the payment he's entitled to doesn't mean the payment is automatic. You need to look at the contract as a whole to see what Omnicare needs to be entitled to that payment. And so we argued, Mr. Walsh argued, you can only look at 4.4, nothing else matters. We said look at the whole contract. And when the judge looked at the whole contract, he rejected that narrow ruling, and he ruled on the basis of, in part, 4.1. So he clearly rejected the 4.4 narrow view, looked at the larger contract, the other provisions, and said you didn't do what you needed to do to get the payment that you would have been entitled to under 4.4, which wasn't in dispute. There was no dispute about what 4.4 said in that area. So we think he did answer. As Mr. Walsh points out in his own briefs, there were very, very thorough pretrial briefs. These issues were teed up to an inch of their life. There was no question as to whether the judge understood what the parties were arguing. And there is enough we submit in that order to see how he resolved that issue. I'm not going to decide it on 4.4. I'm going to look at the whole contract. You didn't do what you needed to do. So the financial risk and insurance risk issue, I'd like to touch on that for a second too, because that's the other. He really has, Mr. Walsh has really two arguments. He's got the entitled to argument, and he's got the financial slash insurance risk argument. And then he takes those and tries, as he should, to fit them in the standards of review for an arbitration case. When you peel all that away, it still comes down to that. On the financial insurance risk, when Omnicare determined or decided that it believed that the CMS eligibility data was incorrect, when it believed that, it had two options. It didn't have to do anything, but it had two options at that point if it wanted to get paid. One was to submit the documentation on which it was relying to RxSolutions so that RxSolutions could process it up the line and get the eligibility status changed. That's one thing they could do. The second thing they could do is say to the beneficiary, or given who these beneficiaries were, could say to their representatives in the nursing homes with whom Omnicare deals with on behalf of these people every day, could say, hey, Mrs. Smith is not listed in the eligibility status she needs to be. Get some information on that so we can get all this stuff processed and paid. They did neither. They did neither. What they did was, and that left them in the position of sitting back and having to sit back and wait to see if CMS itself resolved this and got the eligibility data updated. The risk we're talking about here is the risk that CMS won't do that, ultimately will not do that, so they will never get paid. That's the risk here. What Judge Taylor did after eight days of hearing all these witnesses, hundreds of documents, all this information and CMS regulation, he said, you know, that is a risk. He said, that is a risk, but that's of your doing, and that's not a breach of those provisions by RxSolutions. And he said further, he said Omnicare, he found, knew about this risk, coming into the contracting process. They tried to contract around it. They tried to shortcut that. RxSolutions, as the judge found, as Judge Taylor found, RxSolutions said, no, we can't do it that way. We're not doing it that way. We're going to go by the book, just the way the CMS program is set out. Omnicare came back a couple of months later and said, okay, okay, we'll contract with you on those terms and proceeded forward. So what the judge determined was two sophisticated parties accustomed to dealing in complex federal programs like this. Both came in with their eyes wide open. Omnicare tried to shortcut the CMS process with an amendment to the contract. RxSolutions said no. Omnicare said, okay, we're on board anyway. They signed us up. They did. Omnicare tried to shortcut the system, not do what it needed to do, and then when RxSolutions refused to pay them federal monies. This isn't RxSolution money. This is federal monies. There's no windfall here to RxSolutions to not pay them. When RxSolutions said no, we told you back at the beginning we can't do it that way. We're telling you now we can't do it that way. RxSolutions sued, and that's where we are. So we think that the order, the award, very clearly, or clearly enough, describes how the court, how Judge Taylor, rather, resolved those issues. The entitled to said no, I'm not going to just look right here and focus just on this narrow phrase. I'm going to look at your responsibilities overall, and sure, you may have been entitled to that, but you didn't do what you needed to do to get paid. And on the insurance and the finance risk issue, I won't repeat that. So unless there are any further questions. I have no questions. Thank you. I perceive that I might not have stayed in my position clearly, given some things that Mr. Fitzgerald said. I'm talking about the Western employer's prong of the brief. There's three issues. I'm just talking about Western employers. I'm making two arguments. One, there's no authority from any court that when an arbitrator has a heightened standard for preparing an award and he disregards it, that the award should be upheld. The only authority we have when an arbitrator applied the wrong standard is Western employers, and it's still good law, both after Hall Street and with respect to the general principles of contract law. This is not what we contracted for. Number two, even if you disregard that issue, I'm still on Western employers. Look at the text of the ruling. I gave some examples of things that are completely missing there. 4.4, why was the financial risk provision misread? There are other examples in my brief. Even if you look just at the content of the award, there are significant gaps that don't give me the factual findings and legal reasons we were entitled to and we contracted for. What Mr. Fitzgerald is talking about are implied findings. Well, the arbitrator found this, so I guess he must have said X, Y, Z and rejected A, B, C. No, we're entitled to, I find X, Y, and Z and reject A, B, C. That's what the contract says, and it forces or would have forced the arbitrator to go through all the contested issues and determine and reconcile and make sure he put the requisite thought into the ruling, which may well have changed the ruling. That's what we contracted for, and I submit that's what we're entitled to. I did not address the completely irrational arguments or manifest disregard. So can you just wrap up, please? Our briefs deal both with the completely irrational argument and the manifest disregard argument. I won't add to that here unless the panel has any questions. Thank you. Thank you very much. The case of Omnicare, Inc., BHI Solutions is submitted and we're adjourned for the day. All rise.
judges: Gould, Ikuta, Smith N. R.